# KING *vs.* JEMISON.

[JUDGMENT ON AWARD.]

1. *Requisites and sufficiency of submission.*—A written agreement, " between R. J., acting individually, and S. K., and between the Columbus Bridge Company, represented by R. J. as its president, and S. K.," signed by both parties, and submitting to the determination of certain named arbitrators " the difficulties existing between the above mentioned parties in relation to the said Columbus bridge," is a substantial compliance with the requisitions of the statute (Code, §§ 2709–21) relative to submissions to arbitration.

2. *Requisites and sufficiency of award.*—Under a written submission to arbitration, " between R. J., acting individually, and S. K., and between the Columbus Bridge Company, represented by R. J. as its president, and S. K.," of " the difficulties existing between the above mentioned parties in relation to the said Columbus bridge,"—an award, duly signed by the arbitrators; determining " that the said J. and K. are equal owners of all the stock in

said bridge-company ; " settling " the profit and loss of said stock upon the basis of their equal interest and ownership ; " and finally, after reciting that the arbitrators, " after a careful investigation of the accounts, papers and evidence submitted, have made up an accurate account between the said S. K. and R. J., in the matter of their joint interest in the stock of the said bridge-company," deciding that said K. is indebted to J. in a specified amount, and directing payment to be made,—shows a determination of the matters submitted, and is sufficient.

3. *Admissibility of parol evidence to affect award.*—On motion to have an award entered up as the judgment of the circuit court, the oral testimony of one of the arbitrators, contradicting one of the facts recited in the award as having been ascertained by the arbitrators, is inadmissible ; the award not being assailed for fraud, partiality, or corruption.

4. *Execution on award.*—If an award, made in substantial compliance with the requisitions of the statute, is not performed within ten days after notice of its rendition and delivery of a copy thereof, the papers may be filed in the office of the circuit court, and an execution immediately issued on the award.

APPEAL from the Circuit Court of Tuskaloosa.

Tried before the Hon. WILLIAM S. MUDD.

THE record in this case shows the following facts :

On the 5th March, 1858, a submission and award were returned into the office of the clerk of said circuit court, which were as follows :

"'Articles of agreement, between Robert Jemison, jr., acting individually, and Seth King ; and between the Columbus (Miss.) Bridge Company, represented by R. Jemison, jr., as its president, and Seth King. For the purpose of settling amicably the difficulties existing between the above mentioned parties, in relation to the said Columbus bridge, they hereby agree to submit the matters in controversy to the decision of two arbitrators, one selected by each party ; and in case the arbitrators so selected fail to agree, they shall select an umpire. In conducting the arbitration, the following rules shall be observed by the arbitrators and the parties above mentioned : 1st, All books, papers and receipts of the bridge-company shall be submitted to the inspection of the aforesaid parties and arbitrators. 2d, Said parties can make their statements verbally or in writing, or both, and shall be allowed a reasonable time to produce their proofs to substantiate their statements. 3d, All letters, books

and papers, relative to the matters in controversy, shall be received in evidence, as well as personal testimony, to be given verbally, or taken by deposition; in the latter case, notice shall be given to the adverse party. 4th, Each party pledges himself to produce all vouchers, letters, books, or other evidence in his possession, calculated to explain any transaction in connection with the matters referred. 5th, The arbitrators shall decide said controversy upon principles of equity and justice, and write out their decision. 6th, The parties agree to abide such decision, and, in testimony thereof, hereunto set their hands, on this, the 25th February, A. D. 1857.

R. JEMISON, JR.,

for himself, and as president Columbus Bridge Co.

SETH KING."

(The arbitrators named at the bottom of the submission, were N. L. Whitfield and J. M. Van Hoose.)

"In the matters of account between Seth King and Robert Jemison, jr., connected with the bridge-company at Columbus, Mississippi, and referred to us (James M. Van Hoose and N. L. Whitfield) for arbitration and settlement, we, the said Van Hoose and Whitfield, having met at the office of said Van Hoose in the city of Tuskaloosa, this 21st January, 1858, have each taken the oath required of arbitrators by the statute in such cases; and the said King and Jemison being present, we have this day entered upon the settlement, at the place aforesaid. First, we are satisfied from the evidence submitted, that the said King and Jemison are equal owners of all the stock in said bridge-company; and we will proceed to settle the profit and loss of said stock, upon the basis of their equal interest and ownership of said stock. We have spent this day in examining accounts presented by Messrs. King and Jemison, and other papers. We have also examined C. Templeton and Green Hill as witnesses in the case. We have settled no items in the accounts presented, and adjourn further examination until 9 o'clock to-morrow morning at the same place.

"January 22, 1858. Met pursuant to adjournment,

Messrs. King and Jemison being present. After as thorough examination as we can make of the matter, we have this day allowed Jemison's account, including the lumber furnished by him and the moneys advanced by him in the original construction of the bridge, amounting as rendered to the sum of $12,438 43, subject to correction of all errors that may be made to appear before our final decision. The account is for the years 1842, 1843, and 1844, and subject to like correction of errors. We have allowed, also, Jemison's account for lumber and materials furnished, and cash advanced, in the construction of a draw to said bridge in the years 1850, 1851, and 1852; amount as rendered being $9,297 61. Adjourned, to meet to-morrow at 2 o'clock, P. M.

"January 23, 1858. Met pursuant to adjournment, Messrs. King and Jemison being present. We have examined the account for building the draw to the bridge, and leave it passed upon as stated in our memorandum of yesterday's sitting; and there being no new matter presented, we adjourn, to meet on Monday, the 25th instant, at same place, at 10 o'clock, A. M.

"January 25, 1858. Met pursuant to adjournment, Messrs. King and Jemison being present. Examined Green Hill, witness to support account of receipts of bridge by Jemison as rendered, and have taken said account of receipts under consideration. We have allowed King the sum of $2,573 23, on his account submitted of moneys advanced in the original construction of the bridge. In amount above allowed King, is included 15 per cent. premium on $212 specie advanced by him. Have also allowed Jemison 15 per cent. on $560 specie advanced by him. We find that the amount of $272 29, charged in King's account as paid to B. Williamson, does not enter into the bridge account, but is a charge against Jemison individually. Adjourned, to meet at same place, at 10 o'clock to-morrow morning.

"January 26, 1858. Met pursuant to adjournment, Messrs. King and Jemison being present. We have allowed the accounts of annual receipts of tolls from the bridge, including annual expenditures for the bridge,

from the year 1844 to 1857, both inclusive, (say, fourteen years,) as rendered by Jemison, subject to correction of errors before making our final award. We find that the item of $256 26, in account rendered by King as amount due from Jemison for bridge dividends, has been paid by Jemison, and is therefore stricken from the account. We find, also, that the item of $145 75 in same account, paid on King's order on S. P. Storrs of Wetumpka, should [be] $9 less, to-wit, $136 75. And we now proceed to make up the final account, upon the basis of allowances as hereinbefore stated. We have determined that interest shall be computed in this settlement according to the law of Alabama. After a careful investigation of the accounts, papers and evidence submitted to us, we have made up an accurate account between the said King and Jemison, in the matter of their joint interest in the stock of the Columbus Bridge Company, at Columbus, Mississippi, and find the said King indebted in this behalf to the said Jemison, on the 1st January, 1858, in the sum of $7,660 95. It is therefore our award in this behalf, that the said King pay to the said R. Jemison the said sum of $7,660 95, with interest on said sum from the 1st January, 1858. Given under our hands, this 28th January, 1858.

N. L. WHITFIELD,<br>J. M. VAN HOOSE."

Appended to the award, as filed in court, was a certificate of the arbitrators, stating that they had delivered a copy of the award to Jemison on the 29th January, 1858, and another copy to King on the 2d February.

On the filing of the submission and award in court, an execution was thereon issued by the clerk, on the same day, for the amount awarded against King, with costs. At the ensuing term of the circuit court, held in March, 1858, King moved the court, pursuant to notice previously given, to set aside the award, and to quash the execution; and at the same term Jemison moved the court to enter up the award *nunc pro tunc*, as of the day on which the papers were filed with the clerk, as the judgment of the court. The motions were heard together, and each party reserved exceptions to the rulings of the court.

"The defendant (King) moved the court to examine the said arbitrators as witnesses, as to whether or not there were any matters submitted which were not decided, or, if decided, whether the said matters were mentioned in the award, or whether there was any admission by Jemison that any other person than himself and King owned or claimed any of the said stock. The said arbitrators stated, in substance, that Jemison stated to them, that he had made a contract with Wynn and Abbott, two gentlemen of Columbus, Mississippi, for the purchase of a ferry, for which he was to give them twenty-five shares of the stock of the said bridge; that it did not, however, appear in evidence to the arbitrators that there had been any deed to the ferry, or any transfer of stock to said Wynn and Abbott, although the ferry came into the possession of the company; that the arbitrators thereupon concluded that this matter of the ferry did not interfere with their decision, previously made, that said Jemison and King were joint owners of the said stock, and the matter of the ferry was passed by without further notice by them; and that this was before the making up of their final award. The court ruled, that this statement of the arbitrators could not enter into the considerations of the court in deciding upon the motion, and therefore ruled out the evidence; to which ruling of the court the defendant (King) excepted."

"The defendant also made sundry objections to the plaintiff's motion to enter up the award as the judgment of the court; all of which the court overruled, and directed the award to be entered up as the judgment of the court; to which the defendant excepted."

The court sustained the defendant's motion to quash the execution, "on the ground that the clerk could not issue an execution on the award until the court had ordered it to be entered up as the judgment of the court;" to which ruling of the court an exception was reserved by Jemison.

By consent, each party assigns as error in this court the rulings of the primary court to which he excepted.

WM. R. SMITH, for the appellant, made these points:

1. The submission is too general and indefinite in the statement of the matters submitted to arbitration. It cannot be sustained under the statute, as "a concise statement of the matters in dispute.—Hickey v. Grooms, 4 J. J. Mar. 125.

2. The award cannot be upheld, because it does not show a determination of all the matters embraced in the submission. The submission specifies two classes of difficulties—1st, those existing between King and Jemison individually; and, 2dly, those existing between King and the Columbus Bridge Company; and it was necessary to the validity of the award that all these difficulties should be passed upon and settled. The award does not follow the submission, either as to parties, or as to subject-matter.—1 H. & J. 671; 11 Gill & J. 299; 2 Hayw. 30; 7 H. & J. 70; 1 Dana, 351; 8 N. H. 82; 13 Johns. 27; 6 Pick. 269; 3 Barbour, 56; 4 Barbour, 253; 12 Wendell, 377; 14 Johns. 96; 1 Peters, 174; 2 Moore, 728, or 4 E. C. L. 421; Davis v. McConnell, 4 Stew. 492; 15 Ala. 398.

3. The favor extended by the courts to arbitrations, applies only to arbitrations at common law, and to such statutory provisions on the subject as are not stringent, penal, or summary. But statutes which trench upon judicial power, which create a new jurisdiction, which innovate upon the common law, or which confer summary remedies, are to be strictly construed.—19 Ala. 43; 20 Ala. 189, 544; 30 Ala. 519.

4. The entire statute is unconstitutional. It creates a judicial tribunal, not "elected, qualified, and commissioned" as judges are required to be by the constitution, and whose jurisdiction is unlimited as to amount; excludes the right of trial by jury, and, by using the word *final*, drives the party into chancery to show fraud, partiality or corruption in the arbitrators.

5. The court committed no error in quashing the execution. The statute does not authorize the clerk to issue an execution on the award, until it has been entered up, on motion to the court, as the judgment of the court.

33

W. Moody, and Geo. Goldthwaite, *contra.*—1. Arbitrations were greatly favored by the courts at common law, and statutory provisions on the subject have always been liberally construed. All reasonable intendments are made in support of them, and that mode of settling controversies is encouraged. It is a cheap and expeditious mode of deciding controversies, by judges selected by the parties themselves, and acting under the sanction of an oath.—Price v. Kirby, 1 Ala. 186 ; Tanksersly v. Richardson, 2 Stew. 132 ; Reynolds v. Reynolds, 15 Ala. 403 ; Byrd v. Odem, 9 Ala. 766 ; Mobile Bay Road Co. v. Yiend, 29 Ala. 326.

2. The submission was clearly under the statute. No single provision of the statute was disregarded or neglected in it, or in the proceedings had under it. Its sufficiency is supported by the following cases : Callahan v. McAlexander, 1 Ala. 367 ; Byrd v. Odem, 9 Ala. 766 ; Lamar v. Nicholson, 7 Porter, 165 ; Malcolm v. Fullerton, 2 Term Reports, 645 ; Merritt v. Merritt, 11 Illinois, 565.

3. If the facts recited and ascertained in and by the award be true, (as they must be considered in the absence of proof of fraud, partiality or corruption on the part of the arbitrators,) the award shows a full determination of all the matters embraced in the submission.—Smith v. Johnson, 15 East, 213 ; Cro. Eliz. 838 ; Karthaus v. Ferrer, 1 Peters, 222 ; Jackson v. Ambler, 14 Johns. 96 ; 8 Co. 98 ; Kyd on Awards, 72 ; Byrd v. Odem, 9 Ala. 766 ; Goodwin v. Yarborough, 1 Stew. 153.

4. The award was final, and could not be impeached by proof of errors and mistakes, if any such existed.—Code, § 2721 ; Bumpass v. Webb, 4 Porter, 70 ; Goodwin v. Yarborough, 1 Stew. 153.

5. If the award is not performed within ten days after notice and delivery of copy, and is thereupon returned into court, the statute expressly declares, that it "has the force and effect of a judgment at law, on which execution may issue as in other cases."—Code, § 2714. No action of the court is contemplated to make the award operate as a judgment. It is the duty of the clerk to issue

execution on it immediately, as in case of a forfeited delivery bond.

STONE, J.—In the case of the president and directors of the Tuskaloosa Bridge Company v. Jemison, during the present term, we announced principles which must be regarded as decisive of the principal question in this cause. The submissions in that case and in this are substantially alike; and inasmuch as each submission is in writing, signed by the parties, contains a concise statement of the matter in dispute, and refers the determination thereof to certain named arbitrators, we hold that the submission was under the Code, and must be determined by its provisions.—§§ 2710–2721, inclusive.

The principles asserted in Hickey v. Grooms, 4 J. J. Marshall, 124, are not opposed to this view. In that case, the parties referred a *special matter* designated in the submission, and *all other matters in contest between them*, to arbitration. The court of appeals of Kentucky, under a statute similar to ours, as we gather from the opinion pronounced, ruled, that the " other matters in contest" between the parties were not sufficiently identified to be brought within the statute. We agree with that court, that the language there employed was not a " concise statement in writing of their controversy." As to the " other matters in contest," it was no statement at all; gave no information of what those *other matters* were. In the present record, the matters submitted are certain *difficulties in relation to the said Columbus bridge*. This, we hold, is a statement in writing of *the matter in dispute*, and sufficiently identifies it.

[2.] It is objected, that the arbitrators did not determine the matter or controversy submitted, because they did not, in terms, pronounce on the difficulties existing between the Columbus Bridge Company and King. The record does not sustain the appellant in this position. The award finds, and asserts as a fact, " that the said King and Jemison are equal owners of all the stock in said bridge-company." It then proceeds to " settle the profit and loss of said stock upon the basis of their equal inter-

est and ownership of said stock." Now, if this be true—and we are bound to regard it as true, unless the arbitrators were guilty of fraud, partiality or corruption—then the Columbus Bridge Company was, in fact, but a chartered partnership; and the settlement of all difficulties existing between King and Jemison, the partners and owners of all the stock, was necessarily a settlement of all difficulties between the bridge-company and each of the partners. We hold, then, that on the face of the award, the matter or controversy submitted does appear to have been determined.

[3.] The testimony offered by King, when the award was sought to be made the judgment of the court, could, at most, only tend to disprove one of the facts recited and found by the arbitrators—namely, that the said King and Jemison were equal owners of all the stock in said bridge-company. If facts found by arbitrators could be retried and overturned in this way, arbitrations, instead of being a mode of settling disputes, would become the initiatory step to litigation. This, too, in direct opposition to the statute, which declares they are final, unless attacked for fraud, partiality or corruption.—Code, § 2721. There was no error in disregarding that testimony.—Young v. Leaird, 30 Ala. 371.

[4.] The appellee, Jemison, under the agreement endorsed on the record, assigns as error the judgment of the circuit court in quashing the execution issued by the clerk. This assignment must be sustained. It is true that, under section 2710 of the Code, the award, if not performed, is directed to be entered up as the judgment of the proper court. It is equally true that, under section 2714 of the Code, the award has the force and effect of a judgment at law, upon which execution may issue as in other cases, if the award is not performed in ten days after notice and delivery of copy. There is no right to have an execution, or to have the award made the judgment of the court, if the award is performed as contemplated by the statute. If the award is not performed within ten days after notice of the award and delivery of a copy thereof, then execution may be sued out. If a term of

the circuit court be held in the county, in which the award is made, before such award is performed, then the award may be made the judgment of the court.

The judgment of the circuit court, so far as the same is appealed from by King, is affirmed. The judgment of the court quashing the execution is reversed. Let the appellant, King, pay the costs of the appeal.